

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SHERMAINE ALI JOHNSON,

                    Petitioner,

v.

HENRY PONTON,

                    Respondent.

Civil Action No. 3:13-CV-404

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Shermaine Ali Johnson's Petition for a Writ of Habeas Corpus ("Petition") and Respondent Henry Ponton's Motion to Dismiss ("Motion"). In his Petition, Johnson alleges that the new rule announced in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), ("*Miller* rule") applies retroactively, rendering his life sentence for murder unconstitutional. Respondent Ponton argues that the rule announced in *Miller* is not retroactive, and moves for dismissal of the Petition. For the reasons stated below, Ponton's Motion is GRANTED and Johnson's Petition is DISMISSED.

### I.

Johnson was convicted of the capital murder and rape of Hope Hall in 1998. Johnson was sixteen at the time of the offense, but was sentenced by a jury to death. In 2001, the Supreme Court of Virginia partially granted Johnson a writ of habeas corpus based on his trial counsel's failure to request a particular jury instruction. On remand, a properly instructed, second jury also imposed a sentence of death. During a statutorily mandated proportionality review, the Supreme Court of Virginia affirmed Johnson's sentence, noting:

> We have reviewed the records of all capital cases considered by this Court under Code § 17.1-313(E). Because the jury in this resentencing proceeding imposed the death sentence based on both statutory predicates of future

> dangerousness and vileness, we give particular consideration to other capital murder convictions in which the death sentence was based on both predicates.
>
> Johnson's age at the time he raped and murdered Hope Hall is only one factor that we consider in determining whether juries generally impose the death penalty for similar crimes. The record also shows that Johnson committed five rapes within a period of seven months, and that he stabbed one of these rape victims.

*Johnson v. Commonwealth*, 591 S.E.2d 47, 61 (Va. 2004).

Johnson subsequently sought review from the Supreme Court, which remanded Johnson's case in light of its decision in *Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("A majority of States have rejected the imposition of the death penalty on juvenile offenders under 18, and we now hold this is required by the Eighth Amendment."). Pursuant to Virginia Code sections 17.1-313(D)(2) and 53.1-151, the Supreme Court of Virginia commuted Johnson's sentence to life without the possibility of parole.[1] In commuting Johnson's sentence, the Virginia Supreme Court did not hold or order a rehearing.

Johnson filed the present Petition pursuant to sections 2241 and 2254 of Title 28 of the United States Code on June 24, 2013, alleging that his sentence of life imprisonment without the possibility of parole is unconstitutional in light of *Miller*. Johnson argues that *Miller* applies retroactively to cases on collateral review and requests that the Court vacate his sentence and order a new sentencing consistent with the requirements of *Miller*.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may review a petition for a writ of habeas corpus by a person serving a sentencing imposed by a state

---

1 There is no evidence to indicate that the Supreme Court, in commuting Johnson's capital sentence, believed it had discretion to impose a sentence other than life imprisonment. Virginia Code Section 18.2-10 states that a juvenile convicted of capital murder "shall be" sentenced to life imprisonment, and the *Miller* Court considered this statute to impose a mandatory, rather than a discretionary, life sentence. *See Miller*, 132 S. Ct. at 2471 n.10 (citing Brief for Respondent, Miller v. Alabama, 132 S. Ct. 2455, 2012 WL 588454 at *25); Brief for Respondent, Miller v. Alabama, 132 S. Ct. 2455, 2012 WL 588454 at *16-21. Further, Johnson's parole ineligibility was dictated by Virginia Code Section 53.1-151(B)(1), which states, "Any person convicted of three separate felony offense of (i) murder, (ii) rape ... or any combination of [those offenses] when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole." Because both Johnson's parole ineligibility and his life sentence were dictated by statute, Johnson's sentence was a mandatory life sentence within the meaning of *Miller*.

2

court only on grounds that the person is being held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the petitioner's claim was decided on its merits by the state court, federal review is highly deferential. *See* 28 U.S.C. §§ 2254(d)(1)-(2). However, when a petitioner's claim is not procedurally defaulted and has not been adjudicated on the merits by a state court, the federal court reviews questions of law and mixed questions of fact and law de novo. *Weeks v. Angelone*, 176 F.3d 249, 257 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

Generally, a petitioner has only one year from the time his state-court conviction becomes final in which to apply for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final upon conclusion of the petitioner's direct appeal or expiration of the time in which such appeal can be sought. *Id.* However, if the constitutional right asserted by the petitioner is "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," the one-year limitations period begins running instead on the date the constitutional right was initially recognized. 28 U.S.C. § 2244(d)(1)(C).

The familiar standards of Federal Rule of Civil Procedure 12(b)(6) apply to a government's motion to dismiss a section 2254 petition. *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). A motion to dismiss therefore "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." *Id.* at 139 (internal quotation marks omitted) (quoting *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the alleged violations occurred. *See Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 678.

**III.**

3

Johnson's Petition presents a justiciable and exhausted claim. However, this Court is persuaded that the new rule announced in *Miller* is not retroactively applicable to cases on collateral review. As such, Johnson cannot claim the benefit of the *Miller* rule, either in its substance or to make the Petition timely.

Johnson was convicted on charges of both murder and rape, and was ultimately sentenced to life imprisonment for each offense. Johnson's parole ineligibility on each sentence results from application of Virginia Code section 53.1-151(B1). This statute denies parole eligibility to any person convicted of three separate offenses of rape or murder. *See* Va. Code § 53.1-151(B1). Johnson was convicted on two separate rape charges prior to his convictions for the rape and murder of Hope Hall. As such, even if Johnson's sentence for murder is vacated, he will still be subject to a life sentence without the possibility of parole for his rape conviction.

However, the Supreme Court has definitively stated that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York*, 392 U.S. 40, 58 (1967). Johnson is currently subject to direct legal consequences for the sentence that he challenges here; and in light of the changing landscape of Supreme Court precedent with regard to the sentencing of minors, it would be difficult to show that Johnson faces no possibility of future consequences stemming from his murder sentence.[2] *See, e.g., Miller*, 132 S. Ct. at 2460; *Graham v. Florida*, 560 U.S. 48 (2010) (holding life sentences for non-homicide crimes unconstitutional as applied to minors). While this Court's determination of the merits of Johnson's petition may ultimately have no effect on his imprisonment, it will have an effect on the legal status of Johnson's

---

[2] Further, applying Ponton's argument to Johnson's case illuminates why this claim is not moot. If, as Ponton argues, the existence of rape life sentence makes this claim moot, then the existence of the murder life sentence makes moot any argument challenging the rape sentence under *Graham v. Florida*, 560 U.S. 48 (2010) (holding life sentences for non-homicide crimes unconstitutional as applied to minors). This leads to an absurd result: Johnson, or any defendant subject to multiple sentences of the same term, may only challenge one sentence if he challenges all sentences. Ponton has not cited to any authority supporting this reasoning.

conviction for murder, if only to determine whether he is constitutionally entitled to resentencing.[3] As such, Johnson's claim does not present a moot question.[4]

A habeas petition may be granted pursuant to section 2254 once state remedies have been exhausted. 28 U.S.C. § 2254. Remedies are not exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The burden of proving exhaustion rests with the petitioner. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Johnson meets this burden in the Petition. Virginia law precludes modification of Johnson's sentence absent a finding of unconstitutionality, *Singh v. Mooney* 541 S.E.2d 549, 551 (Va. 2001), *LeMelle v. Commonwealth*, 302 S.E.2d 38, 40 (Va. 1983), and indicates that avenues for state habeas relief have expired, Va. Code § 8.01-654(A)(2), *Hines v. Kuplinski*, 591 S.E.2d 692 (Va. 2004). Additionally, Ponton concedes that Johnson no longer has any avenue of state relief: "[Johnson's challenge] is now barred as untimely under the Virginia statute of limitations, Virginia Code § 8.01-654(A)(2), as successive under Code § 8.01-654(B)(2) and also pursuant to the procedural rule in *Slayton*." (Resp't's Br. ¶ 12 (citation omitted).) Accordingly, Johnson has exhausted state remedies.

Nevertheless, Johnson's motion is untimely in light of section 2244, which allows a petitioner to file a habeas petition within one year from the latest of "the date on which the judgment became final," or "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."[5] 28 U.S.C. § 2244(d)(1)(C). The

---

3 The Supreme Court's reasoning in *Church of Scientology v. United States*, 506 U.S. 9 (1992), although not directly on point, supports this conclusion. In *Church of Scientology*, the Supreme Court found that the Church's appeal of an order requiring submission of certain documents to the IRS was not moot, even though the Church had already complied. *Id.* at 12-13. The Court admitted that it could not return the parties to the status quo, but found that the possibility of vindicating a purely legal, constitutional right of privacy was sufficiently concrete to prevent the Church's claim from being moot. *Id.*

4 Ponton has not cited to any federal case in which a court declined, on the basis of mootness, to consider the habeas petition of a defendant currently incarcerated for the challenged conviction.

5 Ponton seems to suggest that Johnson's petition was not "on collateral review" within the meaning of section 2244 because Johnson did not have a *pending* habeas petition at the time the Supreme Court decided

judgment Johnson is challenging became final on September 7, 2005, which was the last date on which he could have sought direct review by the Supreme Court. Accordingly, the Petition is only timely if the new rule announced in *Miller* has been "made retroactively applicable to cases on collateral review."[6] *Id.*

Johnson maintains that the Supreme Court, in *Miller*, implicitly held that the *Miller* rule was retroactively applicable on collateral review.[7] Before the court were two parties from separate, but consolidated, cases: Miller, who brought a claim on direct appeal, and Jackson, who brought a claim on collateral review.[8] *See Miller*, 132 S. Ct. at 2461. Under long-settled precedent, "the integrity of judicial review requires that [the Court] apply [newly decided constitutional rules] to all similar cases pending on direct review." *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987). By contrast, new constitutional rules "will not be applicable to those cases which have become final" unless they fall within one of two familiar exceptions. *Teague v. Lane*, 489 U.S. 288, 310 (1989). However, "once a new rule is applied [on collateral review] to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Id.* at 300. Johnson asks this Court to assume that the Supreme Court, having chosen to apply the newly announced *Miller* rule to Jackson's

---

*Miller.* (Resp't's Br. ¶ 14 n. 4.) Such an interpretation of the statutory language would effectively bar retroactive application of all new Supreme Court rules because a habeas petition cannot be filed on the basis of a new rule until that rule is announced. Congress likely did not intend such a preclusive result. *Cf. In re Evans*, 449 Fed. App'x 284 (4th Cir. 2011) (per curiam) (authorizing petitioner to file a successive habeas petition after the Supreme Court announced a new, retroactive rule).

6 In *Tyler v. Cain*, 533 U.S. 656 (2001), the Supreme Court interpreted 28 U.S.C. § 2244(b)(2)(A) and concluded that "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler*, 533 U.S. at 663 (citing 28 U.S.C. § 2244(b)(2)(A)). The *Tyler* Court interpreted a different statute than that at issue here. The Fourth Circuit has recognized that the statutory language found in Section 2244(b)(2)(A) is materially different than that in other habeas statutes. See *United States v. Mathur*, 685 F.3d 396 (4th Cir. 2012) (Niemeyer, J., writing separately in support of the judgment); *United States v. Thomas*, 627 F.3d 534 (4th Cir. 2010) (finding that section 2255(f)(3) does not require the Supreme Court to make the initial retroactivity determination). Therefore, Ponton's argument that the Supreme Court alone can determine the retroactive effect of a new constitutional rule fails.

7 Justice O'Connor's concurrence in *Tyler* indicates that a rule may be "made" retroactive by necessary implication. *See Tyler*, 533 U.S. 668-69 (O'Connor, J., concurring). Justice O'Connor was the fifth Justice joining the majority.

8 Miller sought certiorari on direct review of his conviction and sentencing. *Miller*, 132 S. Ct. at 2462-63. Jackson sought review of the Arkansas Supreme Court's denial of state habeas relief; Jackson's case was, therefore, on collateral review.

collateral claim, necessarily determined that the new rule should be retroactively applicable to all cases on collateral review.

This Court declines to make such an assumption, particularly in light of the Supreme Court's treatment of similar cases. Although retroactivity analysis is a threshold question and a prerequisite for announcement of a new constitutional rule, the Supreme Court has foregone this analysis more than once. *Id.*; *see, e.g., Miller*, 132 S. Ct. 2455; *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the petitioner brought a collateral challenge to his conviction, and in reversing the decision below, the Supreme Court announced a new constitutional rule. *Padilla*, 559 U.S. at 374-75; *Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013); *Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (2008). Notwithstanding its application of a new constitutional rule to Padilla's collateral claim, the Supreme Court later announced that the *Padilla* rule would not be applied retroactively to other cases on collateral review. *See Chaidez*, 133 S. Ct. at 1113. In light of such history, this Court will not assume that the Supreme Court's application of a new constitutional rule to Jackson's collateral claim necessarily acts as a determination of the *Miller* rule's retroactivity.

Because the Supreme Court has been silent on the retroactive application of the *Miller* rule, this Court must consider whether retroactive application is appropriate under the framework set forth in *Teague*. *See Teague*, 489 U.S. 310-11; *Thomas*, 627 F.3d 534 (finding that lower courts may properly make the initial retroactivity determination for a new constitutional rule). The parties concede that *Miller* announced a "new" constitutional rule within the meaning of *Teague*. Therefore, the *Miller* rule may only be applied retroactively if it falls within one of two exceptions to a general rule of non-retroactivity. *Teague*, 489 U.S. at 311. Unless the *Miller* rule is a substantive rule or a watershed rule of criminal procedure, it cannot be applied retroactively to Johnson's collateral challenge.

The first exception to *Teague*'s rule of non-retroactivity applies to rules prohibiting certain forms of primary, private conduct, or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense. *See Beard v. Banks*, 542 U.S. 406, 416 (2004); *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989). These rules are deemed substantive and generally apply retroactively on collateral review. The parties' disagreement over whether *Miller* announced a substantive or procedural rule turns on whether *Miller* categorically barred the imposition of mandatory life sentences on juveniles or, rather, barred courts from imposing life sentences on juveniles without exercising some measure of discretion.

The Supreme Court's language indicates that it intended the *Miller* rule to be procedural, rather than substantive. The Court first noted that its decision stemmed from the confluence of two different lines of precedent, including *Graham*, 560 U.S. 48, and similar cases categorically banning certain sentencing practices. *Miller*, 132 S. Ct. at 2463-64. The *Miller* Court then expressly distinguished its opinion from *Graham*, stating, "Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." [9] *Id.* at 2471. The plain language of *Miller* itself dictates that the *Miller* rule is procedural, rather than substantive.

Further, the Supreme Court's reasoning in *Schriro v. Summerlin*, 542 U.S. 348, 354 (2004), indicates that *Miller* is not properly characterizing as categorically prohibiting mandatory life sentences for juveniles, even if it is semantically true. *Summerlin* considered the retroactivity of the rule announced in *Ring v. Arizona*, 536 U.S. 584, 603-09 (2002), which held that the Sixth Amendment requires a jury to find aggravating factors necessary, under Arizona

---

[9] This language also indicates that Johnson's reliance on *Schriro v. Summerlin*, 542 U.S. 348, 354 (2004), is misplaced. *Summerlin* discussed a rule requiring proof of aggravating factors in sentencing. *See Summerlin*, 542 U.S. at 354. In contrast, the *Miller* rule requires only that a sentence "consider[] an offender's youth and attendant characteristics." This requirement for discretion is distinguishable from the requirement for proof that the *Summerlin* Court indicated would be a substantive rule. *See Summerlin*, 542 U.S. at 354.

law, to impose the death penalty. The *Summerlin* Court found its new rule procedural because it altered only the range of permissible methods for making an otherwise substantive determination. *Miller* does not categorically bar life sentences for juveniles but—similarly to *Summerlin*—only adds a procedural safeguard that must be followed prior to imposition of such a sentence. *See Miller*, 132 S. Ct. at 2469 ("Although we do not foreclose a sentencer's ability to [impose life without parole for juveniles] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."). Accordingly, the *Miller* rule does not fall within *Teague*'s first exception.

The second exception to *Teague*'s rule of non-retroactivity applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard*, 542 U.S. at 417. Since *Teague*, the Supreme Court has reviewed numerous claims that new rights fall within this exception, and it has rejected every single one of them. *See Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (collecting cases). The Supreme Court has indicated that only one case, *Gideon v. Wainwright*, 372 U.S. 335 (1963), has ever qualified for retroactive application under the second *Teague* exception. *Whorton*, 549 U.S. at 419; *Beard*, 542 U.S. at 417 ("In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon* [ ] (right to counsel), and only to this rule.").

*Gideon* incorporated the Sixth Amendment right to counsel against the states and held that the right is violated when states fail to appoint defense counsel for defendants who cannot afford representation. *See Gideon*, 372 U.S. at 339-41. The reason *Gideon* would be given retroactive application under *Teague* is that "[w]hen a defendant who wishes to be represented by counsel is denied representation . . . the risk of an unreliable verdict is intolerably high." *Whorton*, 549 U.S. at 419. *Gideon* created a constitutional requirement that every indigent defendant charged with a felony be provided an attorney at the government's expense. *See id.* By

comparison, most other new rights are "much more limited in scope" and have a "far less direct and profound" relationship with the "accuracy of the factfinding process." *Whorton*, 549 U.S. at 419.

While the new rule announced in *Miller* is certainly profound, it does not announce a watershed rule of criminal procedure. The *Miller* rule applies only to juvenile defendants subject to life imprisonment without the possibility of parole and, therefore, is significantly more limited in scope than *Gideon*. Further, while the *Miller* rule arguably increased the fairness of certain juvenile sentencing proceedings, it "flow[ed] straightforwardly" from the confluence of two lines of precedent and, therefore, did not "alter our understanding of bedrock procedural elements." *Miller*, 132 S. Ct. at 2461, 2464; *Whorton*, 549 U.S. at 418 (quoting *Tyler*, 533 U.S. at 665). Accordingly, the *Miller* rule does not fall within *Teague*'s second exception.

Because the *Miller* rule does not qualify under either exception to *Teague*'s general rule of non-retroactivity, it is not retroactively applicable to cases on collateral review. As such, Johnson cannot claim the substantive benefit of the *Miller* rule and also cannot maintain his Petition at timely under section 2244(d)(1)(C). *See* 28 U.S.C. § 2244(d)(1)(C).

## IV.

Because the rule announced in *Miller v. Alabama*, 132 S. St. 2455, is not retroactively applicable to cases on collateral review, Respondent's Motion is GRANTED and the Petition is hereby DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
James R. Spencer
United States District Judge

ENTERED this 15th day of October, 2013.