IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**SHERMAINE ALI JOHNSON,**

    Petitioner,

v.                                                                                                                          Civil Action No. 3:13cv404

**JOHN A. WOODSON,**

    Respondent.

## MEMORANDUM OPINION

This matter comes before the Court on remand following the decision of the United States Court of Appeals for the Fourth Circuit in *Malvo v. Mathena*, 893 F.3d 265, 267 (4th Cir. 2018), *cert. granted*, 139 S. Ct. 1317 (2019), and *cert. dismissed*, 2020 WL 962431 (U.S. Feb. 26, 2020). In 1999, a jury sentenced Petitioner Shermaine Ali Johnson to death for a rape and murder he committed when he was sixteen. The Supreme Court of Virginia later commuted Johnson's sentence to life without the possibility of parole. Johnson filed a petition for writ of habeas corpus, asking this Court to vacate his sentence and order a new sentencing proceeding because a sentence of life without parole for a juvenile homicide offender, without consideration of his youth and related circumstances, violates the Eighth Amendment. The respondent moved to dismiss. In the interim, Virginia enacted legislation abolishing life-without-parole sentences for juvenile offenders. For the reasons stated below, the Court will dismiss without prejudice Johnson's petition because Virginia's recently-enacted legislation renders it moot.

## I. Procedural and Factual Background

Johnson brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In 1998, a jury in the Circuit Court of the City of Petersburg, Virginia, convicted Johnson of rape and capital murder, and later sentenced him to death. (Mem. Supp. Mot. Dismiss 4, ECF No. 6.) Johnson was sixteen years old when he committed these crimes. (§ 2254 Pet. 3, ECF No. 2.) In 2001, the Supreme Court of Virginia affirmed Johnson's sentence. (Mem. Supp. Mot. Dismiss 5.) After Johnson sought further appellate review, the Supreme Court of the United States remanded his case in light of *Roper v. Simmons*, 543 U.S. 551 (2005), which held that sentencing a defendant to death for a crime he or she committed while under the age of eighteen violated the Eighth Amendment.[2] The Supreme Court of Virginia then commuted Johnson's sentence to life without the possibility of parole. (§ 2254 Pet. 21.)

In his § 2254 Petition, Johnson seeks a resentencing hearing in accordance with *Miller v. Alabama*, 567 U.S. 460 (2012), which held that mandatory life-without-parole sentences for those under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment. On October 16, 2013, the Honorable James R. Spencer, United States District Judge, ruled that Johnson's petition "presents a justiciable and exhausted claim," but dismissed the petition on the grounds that "*Miller* is not retroactively

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court [of the United States], a Justice thereof, a [federal] circuit judge, or a [federal] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] The Eighth Amendment provides in full: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

applicable." (Oct. 16, 2013 Mem. Op. 4, ECF 11.) On March 5, 2015, the United States Court of Appeals for the Fourth Circuit affirmed. *Johnson v. Ponton*, 780 F.3d 219 (4th Cir. 2015).

Johnson filed a Petition for Writ of Certiorari with the Supreme Court of the United States. *Johnson v. Manis*, No. 15-1. Before granting Johnson's writ of certiorari, the Supreme Court decided in *Montgomery v. Louisiana*, which held that *Miller* announced a new substantive rule that retroactively applies to cases on collateral review. 136 S. Ct. 718, 736 (2016). Following *Montgomery*, the Supreme Court granted Johnson's writ of certiorari, vacated the Fourth Circuit's decision affirming dismissal of Johnson's petition, and remanded the case to the Fourth Circuit. The Fourth Circuit then remanded the case to this Court.

On remand, this Court stayed resolution of Johnson's petition while the Fourth Circuit addressed *Malvo v. Mathena*, which included related Eighth Amendment issues concerning juvenile offenders who faced life sentences without the possibility of parole under Virginia's discretionary (not mandatory) sentencing scheme. (ECF Nos. 49, 55.) On June 21, 2018, the Fourth Circuit held that *Miller* and *Montgomery*, both of which spoke to mandatory life sentences, apply equally to Virginia's discretionary sentencing scheme. *Malvo v. Mathena*, 893 F.3d 265, 277 (4th Cir. 2018) (concluding that, "while Malvo's convictions remain valid, nothing . . . precludes him from obtaining habeas relief under the new rule in *Miller*").[3] *Id.*

---

[3] In March 2004, after a jury convicted Lee Boyd Malvo of two counts of capital murder and one count of using a firearm during the commission of a felony, the Chesapeake Circuit Court sentenced Malvo to two terms of life imprisonment, plus three years. *Malvo v. Mathena*, 254 F. Supp. 3d 820, 822–23 (E.D. Va. 2017). In October 2004, after Malvo entered an *Alford* plea to one count of capital murder, one count of attempted capital murder, and two counts of using a firearm in the commission of a felony, the Spotsylvania County Circuit Court sentenced Malvo to two terms of life imprisonment, plus eight years. *Id.* at 823. Under then Virginia Code § 53.1-165.1, Malvo was ineligible for parole on each sentence of life imprisonment.

Like the instant petition, Malvo filed two § 2254 petitions for writs of habeas corpus arguing that his life sentences without the possibility of parole violated the Eighth Amendment. Malvo asked that the District Court vacate his life sentences and order new sentencing

3

After the Fourth Circuit issued its *Malvo* opinion, the respondent sought review of that decision by filing a petition for writ of certiorari before the Supreme Court. The Supreme Court granted the writ and scheduled oral argument. *Mathena v. Malvo*, 139 S. Ct. 1317 (2019). Before hearing that case, however, the Virginia General Assembly amended Virginia law to prohibit life sentences without the possibility of parole for juvenile offenders. (Resp. Br. Mar. 9, 2020 2-3, ECF No. 59.) That statute abolished life-without-parole sentences for juvenile offenders in Virginia. House Bill 35, as enacted, provides that

> any person sentenced to a term of life imprisonment for a single felony offense or multiple felonies committed while that person was a juvenile and who has served at least 20 years of such sentence and any person who has active sentences that total more than 20 years for a single felony offense or multiple felonies committed while that person was a juvenile and who has served at least 20 years of such sentences *shall be eligible for parole*.[4]

(Resp. Br. Mar. 9, 2020 2-3; ECF No. 59 (emphasis added).) As a result, the parties in *Malvo* stipulated to dismissal of their appeal before the Supreme Court "in light of the legislation signed [February 24, 2020] by the Governor of Virginia." (*Id.* Ex. 2.)

On March 9, 2020, in accordance with this Court's Briefing Order, the Parties filed their position statements regarding the disposition of *Malvo v. Mathena* and its effects on this case. (Resp. Br. Mar. 9, 2020; Pet'r's Br. Mar. 9, 2020; ECF No. 60.) Respondent avers that Virginia's enactment of House Bill 35 has rendered moot Johnson's § 2254 Petition. (Resp. Br. Mar. 9, 2020 2-3.) Respondent claims that when Virginia Governor Ralph Northam signed

---

proceedings reflective of the factors set forth in *Miller* and *Montgomery*. *Id.* at 824. The District Court granted both of Malvo's petitions, in part based on its holding that "*Miller* applies to all situations in which juveniles receive a life-without-parole sentence," even when sentenced under a *discretionary* sentencing scheme. *Id.* at 827. The Fourth Circuit affirmed the district court's decision. *Malvo*, 893 F.3d at 277.

[4] Johnson was sentenced on February 22, 1999. He has served more than twenty years of his sentence.

4

House Bill 35, that act mooted Johnson's § 2254 Petition because "there were no longer any juvenile offenders serving life-without-parole sentences in Virginia." (Resp. Br. Mar. 9, 2020 3.) In contrast, Johnson argues that House Bill 35 does not moot his requested relief because *Malvo*'s reasoning applies to Johnson and "he seeks the relief of a resentencing, rather than parole eligibility." (Petr's Br. Mar. 9 2020 3, ECF No. 60.) The Court considers the merits of Johnson's § 2254 Petition below.

## II. Standard of Review

A federal court may consider a petition for writ of habeas corpus from a person in state custody "only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States."[5] 28 U.S.C. § 2254(a). In this case, Johnson challenges the constitutionality of his state sentence (life without parole) and, in light of *Miller*, asks for a resentencing hearing. (§ 2254 Pet. 13–14, ECF No. 1.) As a threshold matter, Johnson has met the procedural requirements for habeas petitions, namely timeliness[6] and exhaustion.[7]

---

[5] When, as in this case, a state court has not reviewed a petitioner's claim on the merits, federal habeas courts may review the claim de novo. *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999).

[6] If a petitioner seeks to assert a newly recognized constitutional right, he or she has one year to file his petition from when the Supreme Court recognized that right, "if the right has been ... made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). On June 25, 2012, the Supreme Court recognized a new constitutional right in *Miller* and later confirmed the retroactive applicability of that right in *Montgomery*. On June 24, 2013, Johnson filed his § 2254 Petition, within one year of the Supreme Court's decision in *Miller*.

[7] Prior to filing a petition for writ of habeas corpus in federal court, a petitioner must have exhausted his remedies in state court. *See* 28 U.S.C. § 2254(b)(1). A petitioner will satisfy the exhaustion requirement if "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The time for Johnson to file a habeas petition in state court has expired. *See* Va. Code Ann. § 8.01-654(A)(2). Moreover, Johnson cannot file a motion to vacate his sentence as void ab initio under Virginia law. A motion to vacate filed years after a sentencing cannot address a *Miller* violation because such a violation "does not render the sentence void ab

5

## III. Analysis

The Court turns first to the rule announced in *Miller* and *Montgomery* and determines that those cases apply to Johnson's sentence. Nevertheless, the newly-enacted legislation in Virginia, abolishing life-without-parole sentences for juvenile offenders, renders moot Johnson's habeas petition.

### A. The Rule Pronounced in *Miller* and Extended Through *Montgomery* and *Malvo* Addresses Juvenile Offenders Facing Life-Without-Parole Sentences

In *Miller*, the Supreme Court found that two mandatory life-without-parole sentences for juvenile offenders violated "the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. Although *Miller* did not foreclose sentences of life without parole for juvenile homicide offenders, it required the sentencing jury or court "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. The *Miller* Court emphasized "individualized sentencing" for "the law's most serious punishments." *Id.* at 483.

In *Montgomery*, the Supreme Court held that *Miller* announced a substantive rule of constitutional law, giving its rule retroactive effect in cases on collateral review. 136 S. Ct. at 724. The *Montgomery* Court explained, "*Miller* did bar life without parole . . . for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* (emphasis added). This rare juvenile offender "exhibits . . . irretrievable depravity," and his or her "crime reflects irreparable corruption." *Id.* at 733–34 (describing the chance of finding such a juvenile offender as "uncommon") (quoting *Miller*, 567 U.S. at 471, 479–80).

---

initio but merely voidable." *Jones v. Commonwealth*, 795 S.E.2d 705, 720 (Va. 2017). House Bill 35, however, provides Johnson a new avenue for relief because that state law prohibits life-without-parole sentences for juvenile offenders in Virginia.

6

Procedurally, before imposing a life-without-parole sentence, "*Miller* requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence."[8] *Id.* at 734. The sentencing jury or court must also consider whether the juvenile offender's crime "reflects 'unfortunate yet transient immaturity.'" *Id.* (quoting *Miller*, 567 U.S. at 479). Only after considering these factors may a court sentence a juvenile offender to life without parole if his or her crime indicates "permanent incorrigibility." *See id.* at 734–35. A court should impose a lesser sentence when a juvenile's crime reflects "transient immaturity." *See id.*

In *Malvo*, the Fourth Circuit recognized that the rule announced in *Miller* and made retroactive by *Montgomery* extended to discretionary sentencing schemes like Virginia's. *Malvo*, 893 F.3d at 271–72 (recognizing that juveniles as a class do not deserve the most severe punishments, although courts may find a rare few juveniles permanently incorrigible). The *Malvo* court concluded that "a sentencing judge also violates *Miller*'s rule any time it imposes a discretionary life-without-parole sentence on a juvenile homicide offender without first concluding that the offender's 'crimes reflect permanent incorrigibility,' as distinct from 'the transient immaturity of youth.'" *Id.* (quoting *Montgomery*, 136 S. Ct. at 734). The *Malvo* Court

---

[8] The attendant characteristics of youth include the following:

> First, children have a "lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk-taking. Second, children "are more vulnerable to negative influences and outside pressures," including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity."

*Id.* at 733 (quoting *Miller*, 567 U.S. at 471; *Roper v. Simmons*, 543 U.S. 551, 569–70 (2005)); *see also Miller*, 567 U.S. at 477 (summarizing the attendant characteristics of youth as "immaturity, impetuosity, and failure to appreciate risks and consequences").

7

further recognized that Malvo's life-without-parole sentence did not satisfy Eighth Amendment requirements as articulated in *Miller* and *Montgomery* because the "jury was never charged with finding whether Malvo's crimes reflected irreparable corruption or permanent incorrigibility, a determination that is now a prerequisite to imposing a life-without-parole sentence on a juvenile homicide offender." *Id.* at 275. Nor did the sentencer consider whether Malvo's "youth and attendant circumstances" required a sentence of life without parole or some lesser sentence. *Id.* As a result, the Fourth Circuit affirmed the district court's grant of habeas relief awarding Malvo new sentencings to conform with the procedural requirements set forth in *Miller*. *Id.* at 277.

### B. The Rule Pronounced in *Miller* Applies to Johnson's Sentence

The Court next examines whether the rule pronounced in *Miller*, and extended through *Montgomery* and *Malvo* to juvenile offenders in Virginia serving a life-without-parole sentence, applies to Johnson.

At the time of Johnson's sentencing in 1999, Virginia law classified capital murder as a Class 1 felony and authorized two punishments: death or imprisonment for life. VA. CODE ANN. § 18.2-10(a) (1999); *see id.* § 18.2-31 (defining capital murder as a Class 1 felony). Virginia abolished parole in 1995, meaning that life imprisonment for a Class 1 felony committed after January 1, 1995, did not include the possibility of parole. *Id.* § 53.1-165.1 (2019). Accordingly, at the time of Johnson's 1999 sentencing and the Virginia Supreme Court's commutation of his sentence in 2005, the only possible sentences under the statutory scheme were death or life without parole.[9] *Id.* § 19.2-264.4(A).

---

[9] As Judge Spencer explained in his 2013 Memorandum Opinion,

> There is no evidence to indicate that the Supreme Court, in commuting Johnson's capital sentence, believed it had discretion to impose a sentence other than life imprisonment. Virginia Code Section 18.2-10 states that a juvenile convicted of

8

The Virginia Supreme Court nevertheless determined that the Commonwealth's capital murder sentencing scheme does not mandate life without parole because trial courts can suspend life sentences. *Jones v. Commonwealth*, 795 S.E.2d 705, 712 (Va. 2017) (citing VA. CODE ANN. § 19.2-303). Regardless of whether the Virginia courts sentenced Johnson under either a discretionary or mandatory sentencing scheme, the Fourth Circuit has made clear that the rule announced in *Miller* and made retroactively applicable through *Montgomery* extends to all situations in which juvenile offenders receive life-without-parole sentences. *Malvo*, 893 F.3d at 274. In other words, the discretionary or mandatory nature of a life sentence without parole does not determine whether a juvenile has suffered an Eighth Amendment violation. *Dumas v. Clarke*, No. 2:13-cv-398, 2017 WL 3446640, at *6 (E.D. Va. July 14, 2017), *report and recommendation adopted*, 2017 WL 3446526 (Aug. 10, 2017). Thus, the rule announced in *Miller* applies to Johnson's life-without-parole sentence.

### C. Newly-Enacted Virginia Legislation Renders Moot Johnson's Petition Because it Prohibits Life-Without-Parole Sentences for Juvenile Offenders

In his § 2254 Petition Johnson requests a resentencing with consideration of the *Miller* factors. However, a court need only consider those factors prior to imposing a life-without-parole sentence. Because Virginia recently abolished life-without-parole sentences for juvenile

---

capital murder "shall be" sentenced to life imprisonment, and the *Miller* Court considered this statute to impose a mandatory, rather than discretionary, life sentence. Further, Johnson's parole ineligibility was dictated by Virginia Code Section 53.1-151(B)(1), which states, "Any person convicted of three separate felony offenses of (i) murder, (ii) rape. . . or any combination of [those offenses] when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole. Because both Johnson's parole ineligibility and his life sentence were dictated by statute, Johnson's sentence was a mandatory life sentence within the meaning of *Miller*.

(Oct. 16, 2013 Mem. Op. 2, ECF No. 11 (internal citations omitted).)

9

offenders, the newly-enacted House Bill 35 renders moot Johnson's § 2254 Petition. This conclusion aligns with other districts that have considered similar claims after state law changes.

"A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). There is no case or controversy unless the petitioner has suffered an actual injury that can "be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)); *see Spencer*, 523 U.S. at 18 (stating that the federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong"). Courts have recognized that state law enacted during the course of litigation may moot certain claims while they pend before the court. *See, e.g., Sawyer v. Whitley*, 945 F.2d 812, 814 n.1 (5th Cir.1991) (rejecting Eighth Amendment challenge against electrocution as moot following enactment of state law changing method of execution from electrocution to lethal injection), *aff'd*, 505 U.S. 333 (1992).

Here, newly-enacted Virginia legislation has rendered moot Johnson's § 2254 Petition because he no longer faces a life-without-parole sentence. Although Johnson contends that he requires not only parole eligibility but a resentencing, *Miller* only requires courts to follow certain procedural steps prior to imposing a life-without-parole sentence. *See Montgomery*, 136 S. Ct. at 735 (explaining that *Miller* requires a sentencer to hold a "hearing where youth and its attendant characteristics are considered as sentencing factors . . . to separate those juveniles who may be sentenced to life without parole from those who may not."). Accordingly, the Court need not order Virginia to resentence Johnson after contemplating the *Miller* factors because Johnson,

as a juvenile offender, no longer faces a life-without-parole sentence. Virginia's enactment of House Bill 35 prohibits such sentences.

Indeed, the Supreme Court discussed in *Montgomery* how states could resolve *Miller*-based sentencing claims through legislative action:

> Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. *See, e.g.*, Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
>
> Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change.

*Montgomery*, 136 S. Ct. at 736. So long as Virginia provides Johnson with a meaningful opportunity for parole in accordance with its new law, then Virginia will satisfy the requirements of the Eighth Amendment as explained in *Miller*. The parties in *Malvo*, which similarly addressed life-without-parole sentences for juvenile offenders under Virginia's discretionary sentencing scheme, reached the same conclusion when they agreed to dismiss their appeal after Virginia enacted House Bill 35.

This conclusion comports with cases from other jurisdictions that have found *Miller* challenges moot after states enacted similar laws abolishing life-without-parole sentences for juvenile offenders. *See, e.g., Hack v. Cassady*, No. 16-04089-CV-W-ODS, 2019 WL 320586, at *5 (W.D. Mo. Jan. 24, 2019), *certificate of appealability denied*, No. 19-1953, 2019 WL 5783331 (8th Cir. Aug. 14, 2019) ("With the enactment of [Missouri Statute §] 558.047,

11

Petitioner is no longer serving a sentence of life without parole."); *Scott v. California*, No. 5:14-CV-2648-R (SK), 2018 WL 6070938, at *2 (C.D. Cal. Mar. 8, 2018) (newly-enacted California law mooted petitioner's request for *Miller* resentencing so long as petitioner "is provided a meaningful opportunity at parole within 25 years of incarceration, which is what [California law] provides.") For these reasons, the Court will dismiss Johnson's § 2254 Petition as moot following Virginia's enactment of House Bill 35.[10]

## IV. Conclusion

For the reasons explained in this Memorandum Opinion, the Court is constrained to dismiss without prejudice Johnson's § 2254 Petition as moot.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue

---

[10] In his response, Johnson requested further briefing after the *Malvo* decision issued, in part because the Commonwealth should "concede this new provision [House Bill 35] is applicable to Mr. Johnson" and to address his entitlement to a full new sentencing hearing. (Pet'r's Resp. 3.) The Court need not address this request because Johnson may raise any concerns regarding the application of newly-enacted House Bill 35 and his eligibility for parole before the Virginia courts. Indeed, Virginia state courts should have the first opportunity to review the effect of House Bill 35 on Johnson's claims. *See* 28 U.S.C. § 2254(c) ("A state prisoner has not exhausted his remedies "if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented."); *see also* C. Wright, A. Miller & E. Cooper, 17B Fed. Prac. & Proc. Juris. § 4264.4 (3d ed.) ("The principle that state remedies are exhausted if the federal claim has once been presented to the highest state court, and that it is not necessary to make repeated applications or to try other state remedies, is qualified if there has been an intervening change in the law.").

The Supreme Court has also held that state courts must be given the first opportunity to decide if a new state statute applies to a habeas petitioner. *Mabry v. Klimas*, 448 U.S. 444 (1980). In *Mabry*, the Supreme Court directed that when a "federal constitutional claim arises from the alleged deprivation by state courts of rights created under state law," and when such rights were established subsequent to the defendant's state habeas petition, state courts must be given the first opportunity to remedy any federal constitutional violation. *Id.* at 447; *see also Drennon v. Hess*, 642 F.2d 1204, 1205 (10th Cir. 1981) (finding that, after the Supreme Court issued intervening cases while a habeas petition pended in federal court, the "district court must stay its hand to give the courts of Oklahoma the opportunity to correct alleged violations of federal rights"). Thus, the Court declines to order further briefing here.

unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Because Johnson fails to satisfy this standard, a certificate of appealability will be DENIED.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: March 25, 2020
Richmond, Virginia